FRANK EXUM *v.* STATE.

(*Jackson.* June 11, 1891.)

JURISDICTION. *Of State Court over offense committed in Federal custom-house.*

Perjury falls within the criminal jurisdiction of the State Courts, though committed in a custom-house situated upon land over which exclusive jurisdiction has been ceded by the State to the General Government, where it has occurred upon the trial of a cause in a State Court holding its session in such custom-house, situate within the limits of the county town, by express permission of the Federal authorities, the presiding Judge having removed his Court from the county court-house, under the authority conferred upon him by statute, while it was undergoing repairs.

Code construed: §4870 (M. & V.); §4095 (T. & S.).

Act construed: Acts 1883, Ch. 180.

FROM MADISON.

Appeal in error from Circuit Court of Madison County. LEVI S. WOODS, J.

J. M. TROUTT for Exum.

Attorney-general PICKLE and E. L. BULLOCK for State.

TURNEY, Ch. J. "If for any cause, in the opinion of the Court deemed sufficient, it shall be

impracticable or inconvenient for any Court to hold its sessions at the court-house, or place designated by law, it shall be lawful for the Court to hold its session, or any part thereof, at any room within the limits of the county town; and all its proceedings at such place, whether in civil or criminal cases, shall be as valid as if done at the court-house." Code (M. & V.), § 4870.

At the time of the *commission* of the perjury charged, and of the finding of the indictment, the court-house was undergoing repairs. The Court deemed it impracticable and inconvenient to hold its sessions therein, and by the consent and permission of the authorized agents of the United States Government the Circuit Court held its session in a room of the custom-house, a building within the limits of the city of Jackson, the county town of Madison County, and within a few yards of the court-house.

On a trial before that Court of a case cognizable only in the State Courts for the County of Madison, the plaintiff in error was guilty of the crime of perjury, and was indicted by the grand jury for the county then holding its session as a part of said Court in the same building. On conviction, the prisoner moved an arrest of judgment on the ground that, by the cession Act of the Legislature of 1883, the Federal Government has exclusive jurisdiction over the grounds, buildings, etc., and that such jurisdiction embraces all crimes committed on the premises.

As a general proposition that is certainly true, but if by the law of the State a Court is authorized to occupy a room other than the court-house, and the Federal Government, as it may certainly do, loans to the State Court a room or rooms in its building, it, for the time of such loaning, makes a partial surrender of its right of occupancy, and recognizes the right of the State to be there in a judicial capacity for the dispatch of the public business. Will the courtesy of one government to another absorb the jurisdiction of the latter?

The jurisdiction of Federal Courts over crimes and misdemeanors is purely statutory. The laws of the State create and punish offenses which are not provided for in Federal legislation. Must such offenses escape correction simply because committed on Federal property, although detrimental to good order and morality?

The crime of perjury in this instance was, if an offense at all, one solely against the State. There is in it nothing of which a Federal Court can take cognizance. If the State Courts cannot treat and punish it as a crime, it goes for nothing. If it goes for nothing, it must follow that it was not committed in a Court.

We must reach to the extent of holding that the organization of the Court in the rooms it occupied by the courtesy of the general government was a nullity, and, as a consequence, all its proceedings in all matters civil and criminal are ab-

solutely void, and any officer who executes or attempts to execute process awarded by judgments or decrees of that Court is a trespasser.

If a State Court may not, by the concurrent consent of State and Federal authority, occupy, as a Court, rooms in the custom-house, then in its attempt to do so it was a wrong-doer as to all litigants whose rights it assumed to pass upon.

It was without the pale of all protection by the laws of the State, and a helpless subject of every contempt possible to be offered it.

If it is holden that the State Court lost its jurisdiction in going there, in a criminal proceeding, it must result in holding also that the State and Federal Governments cannot only not contract with each other, but, further, that they may not extend courtesies one to the other.

The law, as we see, authorizes the Court to occupy rooms away from the court-house. There is no restriction in the permission.

The Court is left to select the rooms and make its terms. It may arrange with any person, then why not with the United States Government, the owner of the fee with the absolute right of disposal?

The broad jurisdiction over and within the public grounds and buildings ceded to the United States is for its own protection, and so long as the power to protect is preserved there is no violation of the cession Act.

The terms in which the purposes of the Act

and the intentions of the United States Government are expressed, convey the single suggestion of security against trespass and its varying results, and were not intended to isolate the State from the Federal Government, or *vice versa.*

There must be lawlessness attending the act of presence on the premises before jurisdiction for security is invoked for the action of the Federal Courts. In the kindness extended by the one and accepted by the other Government in this instance, there is neither moral nor legal wrong; no rights endangered. The jurisdiction of the United States has in nowise been interrupted.

In coming to this conclusion we have not been unmindful of the decisions of the Supreme Court (114 U. S. R. and other Federal Court decisions) on the question of jurisdiction. We do not dissent from the principles they announce; but we think they are not applicable to the peculiar facts of this case. In none of them has consent been given to occupancy by the State; in none of them has the crime committed grown out of proceedings before a tribunal authorized to act therein, and recognized by both State and Federal Governments as a constitutional department; there was no comity to be recognized between sovereigns.

Judgment affirmed.

Judges Lurton and Snodgrass dissent.

Frank Exum *v.* State.

DISSENTING OPINION.

LURTON, J.   I cannot agree to the views of the majority of my brethren, and will briefly state my opinion.   The Act of the Tennessee Legislature in express terms cedes to the United States exclusive jurisdiction over the lot of ground on which the custom-house at Jackson stands.   No reservation of jurisdiction over offenses perpetrated within the cession was reserved, and such reservation would perhaps have been ineffective if contained in the Act.   An express cession of jurisdiction was indeed unnecessary in view of Art. I., Sec. 8, of the Federal Constitution.   The *consent* of the Legislature of the State to the purchase by the Federal Government of this site for a "needful building," would have operated to give effect to the provision cited, inasmuch as it confers upon the Congress of the United States power to "exercise exclusive legislation in all cases whatsoever" over such site. The jurisdiction thus conferred is identical with that of Congress over the District of Columbia, the latter being provided for in the same clause and by the same words.   This jurisdiction is exclusive of all State authority, and no authority other than that of the Federal Government can be exercised over such a site.   This is well settled by both Federal and State authority.   The subject has been lately considered, and this jurisdiction defined in a very learned opinion by Mr. Justice Fields in the case of *Fort Leavenworth Railroad Co.* v. *Lowe,* 114 U. S., 532.

When a crime has been within such a ceded parcel of territory, it can only be punished by that jurisdiction within which it was committed, and by that government having exclusive jurisdiction over the place of the offense. This aspect of the question is not a new one.

In the case of the *United States* v. *Cornel*, 2 Mason, 60, the opinion was by Judge Story. The defendant had committed murder within Fort Adams, situated in the harbor of Newport, R. I. The site was within the geographical limits of the State of Rhode Island, but on a parcel of territory purchased by the United States with the consent of the State. The Act of cession was not a broad cession Act, but a simple assent by the State, reserving, however, the right to have civil and criminal process of the State executed within the ceded premises. The Court held:

*First.*—That an express cession was unnecessary; consent to the purchase by the Legislature operated to give exclusive jurisdiction to the Government of the United States.

*Second.*—The reservation applied only to process issued for acts done within the State and not for crimes committed within the ceded parcel. This reservation only operated to prevent the site from becoming a sanctuary for fugitives from the State's justice; a provision which I suggest should be inserted in every legislative consent of this kind, or which should be conferred by a general Act of Congress, extending a similar reservation to that

contained in the Act of Congress concerning the light-house establishment, found as Section 4662, Revised Statutes of the United States. The jurisdiction of the Federal Government was held exclusive over crimes committed within Fort Adams.

In *Commonwealth* v. *Cleary*, 8 Mass., 72, it was held that the State could not take cognizance over any offense committed within the lands ceded for arsenal uses.

In 1 Metcalf, 580, we have the opinion of the Supreme Court of Massachusetts to the effect that persons residing upon lands ceded for dock-yards, arsenals, etc., did not acquire the civil and political privileges of citizens of the State, and their children were not entitled to attend the public schools of the State.

In *Links* v. *Rose*, the Supreme Court of Ohio held the inhabitants of an asylum for disabled volunteer soldiers on site ceded for hospital purposes were not residents of the State or entitled to vote therein. 19 Ohio State, 306.

In *Wills* v. *State*, 3 Heis., 141, this Court held that the jurisdiction of the United States was exclusive over grounds temporarily occupied by United States troops while preparing the national cemetery grounds on the field of Shiloh. What is said in that case about the jurisdiction of the State within the cemetery grounds was a dictum construing the peculiar Act consenting to the purchase of those grounds, and is not a sound exposition of constitutional law.

On the other hand, when the United States acquires title to realty within a State without the consent of the Legislature, the jurisdiction of the State remains complete and perfect. This was so ruled in *Fort Leavenworth Railroad Co.* v. *Lowe*, *supra*. These principles seem to be recognized as sound in the opinion of the Chief Justice, but the particular case held not to be controlled by them by reason of the fact that the offense committed by the appellant was that of perjury in a trial of a cause before a State Court sitting within the Federal building by consent and courtesy of the custodian of the Federal building.

Perjury, like every other crime, must have a proven venue. This crime was committed, if at all, without the jurisdiction of Tennessee, and within territory over which the jurisdiction of another sovereign was complete and exclusive. I do not understand that the State of Tennessee can acquire jurisdiction over this territory by the mere courteous act of the custodian of the Federal building, or that the Federal Government can lose a jurisdiction complete and exclusive, conferred by the Federal Constitution, by reason of the permission extended the State Court by the custodian of this building to hold its session within this site. I am inclined to the opinion that the judgments of this Court, thus sitting beyond the jurisdiction of the State, may be upheld as judgments of a Court *de facto* where objection to the jurisdiction was not taken *in limine*. That it could

have protected itself against a contempt in its prisoner, I am disposed to concede as an attribute of a Court *de facto* if not *de jure*. But that the venue of this offense was within the jurisdiction of Tennessee simply because it was an offense committed in the course of a trial of a State cause before a Court sitting without the territorial jurisdiction of the State, is something I cannot concede. The case of the majority must at last rest upon the proposition that the constitutional effect of the consent given by the custodian of this building was to deprive the United States of its exclusive jurisdiction over any crime committed within this site as an incident to or during the course of the session of this State Court. The locus of the crime was beyond the State's jurisdiction, and no agreement or consent can defeat a jurisdiction conferred by the Constitution of the Federal Government, or vest in a State Court jurisdiction over territory purchased by the United States with the consent of the Legislature of the State. That it was an offense against the justice of the State, and not a case provided for by Congress, may operate to defeat Federal jurisdiction, yet, if this be the case, it would not follow that the State has jurisdiction to punish the accused because the Federal criminal law may not provide for such a case. The case does not, however, seem to me to be beyond remedy. It falls, in my judgment, within the Act of Congress of 1825, found at Sec. 5391, Revised Statutes, which adopts

the criminal law of the State within which the cession lies, as to all crimes against State law within the ceded parcel, where Congress has not defined the offense and provided for its punishment. I am clear that the State has no jurisdiction, and that the judgment should be arrested and the prisoner discharged.

In this dissent Judge Snodgrass concurs.